IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 03-cv-00174-CMA-MJW

OLOYEA D. WALLIN,

Plaintiff,

v.

F. DYCUS,
MR. GILBERT,
MR. DOMENICO, and
MS. TRAUB,

Defendants.

---

**RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY
FOR SUMMARY JUDGMENT (Docket No. 287)
and
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Docket No. 315)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to Magistrate

Judge issued by District Judge Walker D. Miller on May 7, 2003. (Docket No. 21).  The

case was subsequently reassigned to District Judge Christine M. Arguello on

October 22, 2008 (Docket No. 313).

On March 5, 2008 (Docket No. 275), this case was remanded by the United

States Court of Appeals for the Tenth Circuit based upon the Supreme Court's opinion

in Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910 (2007), which was decided after Judge

Miller's December 28, 2004, Order on defendants' motion to dismiss.  On June 16,

2008, Judge Miller issued an Order in which he outlined the pertinent history of this case and directed the pro se incarcerated plaintiff to file an Amended Complaint (Docket No. 278). In that Order, Judge Miller stated "[d]ue to the remand the following claims are now pending again: Claim Two (deliberate indifference for failure to obtain medical treatment for Wallin's wrists against Dycus, Gilbert, and Domenico); Claim Three (Eighth Amendment claim for failure to intervene against Gilbert); Claim Six against Gilbert and Domenico only (deliberate indifference for failure to provide Wallin with his prescribed medication against Dycus, Gilbert, and Domenico); and Claim Seven (deliberate indifference for disclosing confidential medical information against Traub)." (Docket No. 278 at 2). Given the age of the case and the complicated procedural posture of the case, and because prior to the appeal to the Tenth Circuit, the court and the defendant were awaiting an amended complaint from the plaintiff, Judge Miller stated it was appropriate for the plaintiff "to now file an amended complaint setting forth the remaining pending claims as articulated in this Order. An amended complaint will provide clarification of the pending claims for both the Court and the parties." (Docket No. 278 at 3-4). Judge Miler thus directed plaintiff to "file an amended complaint setting forth only Claims Two, Three, Six against Gilbert and Domenico, and Seven . . . ." (Docket No. 278 at 4).

## PLAINTIFF'S ALLEGATIONS

Plaintiff thus filed an Amended Prisoner Complaint (Docket No. 279) in which he asserts the following. On July 3, 2002, at Kit Carson Correctional Facility, defendant Officer Gilbert came by plaintiff's cell and asked if plaintiff wanted to go to recreation, and plaintiff replied affirmatively. Gilbert then opened the slot in the door and instructed

plaintiff to come forward. Plaintiff went forward, turned around so his back faced the door, squatted down, and stuck his hands and wrists through the slot in the door. Gilbert grabbed plaintiff's left wrist and placed the wrist restraint on it. Gilbert then grabbed plaintiff's right wrist and was attempting to place the other wrist restraint on it, but there was too much distance between the two wrists. So, while grabbing the right wrist, Gilbert continued to pull the two wrists together in an attempt to bring them closer, but he failed. Plaintiff then told Gilbert that the wrist restraints were too small and that the other officers in the past always used the ankle restraints on his wrists. Gilbert then removed the restraint on plaintiff's left wrist and told plaintiff to hold his position.

Gilbert then called over defendant Sergeant Dycus who asked what the problem was. Gilbert told Dycus that the wrist restraints were too small, and plaintiff needed the ankle restraints. Dycus because angry and irate and started walking toward Gilbert and plaintiff, who was still in his cell with his hands and wrists placed in the door slot. Dycus asked plaintiff in an irate manner if he had a medical slip that states that plaintiff cannot wear wrist restraints and needs to wear ankle restraints on his wrists. Plaintiff explained to Dycus that he had no property, including paperwork, because he was in segregation and that other officers who work in segregation always put the ankle restraints on his wrists because of his size.

Dycus then maliciously and sadistically grabbed plaintiff's left wrist with extreme force and deliberately and intentionally placed the ankle restraint around plaintiff's left wrist extremely tight. Plaintiff jerked forward a little due to extreme sharp pain caused from the restraint being deliberately and unjustly too tight. Dycus, who was still maliciously and sadistically holding plaintiff's left wrist with extreme tightness, yelled to

plaintiff, "Don't you pull away from me!"  Plaintiff told Dycus that the restraint was too tight, and the only reason he twitched was because of the extreme sharp pain that he felt.  Dycus stated, "Don't you ever move again.  You don't move from me!  Not me!"  Dycus then maliciously and sadistically grabbed plaintiff's right wrist with even more extreme force and deliberately and intentionally placed the ankle restraint on plaintiff's right wrist extremely tight.  Plaintiff twitched again from the sharp pain he felt from the restraint because it was being applied with more and more pressure intentionally.

Plaintiff then followed standard procedure by pulling his restrained wrists through the door slot, stood up, turned around to face the door, and stepped back a few paces.  While doing so, plaintiff stated to Dycus that the right restraint was extremely tight, both wrists were hurting badly, and there was no reason for the restraints to be on that tight.  Dycus loudly yelled at plaintiff, including these statements:  "I told you not to move.  I told you don't pull away from me.  Nobody pulls away from me."  Plaintiff again told Dycus that the restraints are too tight and hurting his wrists, and in an angry tone, Dycus told plaintiff to turn around and stick his hands through the door because he was not letting plaintiff go to recreation or take a shower.

Plaintiff turned around, knelt down, and stuck his wrists and hands through the open door slot.  Dycus took hold of plaintiff's wrists with extreme force and pressure and removed the wrist restraints.

After Dycus and Gilbert walked away, plaintiff noticed serious injury to his wrists because of the extreme markings of the restraints on his wrists and the tremendous pain still being felt.  Plaintiff called for an officer to come so he could show the markings on his wrists and get medical attention.  None of the three officers came to the cell,

although they heard the plaintiff request medical assistance.

Gilbert later made his usual rounds around the segregation unit and came by plaintiff's cell.  Plaintiff told Gilbert about his injuries and extreme pain and showed Gilbert the deep colorized markings on his wrists.  Gilbert made a gesture as he acknowledged the injuries, and plaintiff told Gilbert he needed to see the nurse immediately and was in extreme pain.  Gilbert refused, stated that he would get Dycus, and left the cell door.  Dycus then came to the cell and asked plaintiff why he wanted to see the nurse.  Plaintiff told Dycus he was feeling extreme pain in his wrists and hands along with a tingling numbness feeling and had some serious injuries to his wrists.  At Dycus' request, plaintiff showed him his wrists.  Dycus stated he was not going to call the nurse, and he walked away.

Defendant Officer Domenico later made his normal rounds around the unit and came by plaintiff's cell.  Plaintiff informed Domenico of his extreme pain and injuries and showed him his wrists.  Domenico stated he could not call the nurse and walked away.

Gilbert later made his normal rounds around the unit and came by plaintiff's cell. Plaintiff told Gilbert again that he was in extreme pain, had serious injuries, and needed to see the nurse.  Gilbert replied that he could not call the nurse for plaintiff, and he started to walk away.  Plaintiff then advised Gilbert that he also needed his medication as it was the time to take it.  Gilbert said, " no," while Dycus was approaching plaintiff's cell.  Gilbert told Dycus that plaintiff wanted his medication.  Dycus asked plaintiff, "You want what?"  Plaintiff told him he needs his medication and also still needed to see the nurse because he was in extreme pain and his wrists were injured.  In an irate, hostile voice, Dycus told plaintiff that he would not get anything.  Dycus then told his staff of

officers that plaintiff was not to get anything from them and to stay away from his cell. Dycus then told plaintiff that he would not receive anything on his shift including medication or medical help and that plaintiff would have to wait until the next shift came on to get anything.

Defendant nurse Traub subsequently did her rounds in the unit. When she arrived at plaintiff's cell, plaintiff told her he needed immediate medical attention for serious injuries and enormous pain being encountered. Plaintiff held up his wrists, and Traub told Gilbert to open up the door slot. Traub then told plaintiff to stick his wrists through the open slot so she could examine them. She inspected plaintiff's wrists and documented all the injuries on the appropriate body injury forms and her log book. She then gave plaintiff some pain medicine to relieve his pain and discomfort. Plaintiff told Traub he wanted his medical information kept confidential because of his rights and fear of Dycus. Traub stated she would keep all information confidential, and she left the cell. As Traub was leaving the segregation unit, Dycus stopped and questioned her about plaintiff's injuries. Traub intentionally informed Dycus of plaintiff's medical information regarding his injuries, pulled out the documented body injury report form, and showed it to Dycus. Plaintiff stated to Traub and Dycus in a loud voice to stop discussing his confidential medical information and that his medical information is confidential and private. Dycus told plaintiff to shut up, and Dycus and Traub continued to discuss the confidential medical information. Traub then left the unit.

Dycus then sat Gilbert down, started writing a report, set a blank paper in front of Gilbert, and instructed Gilbert what to write down. Gilbert later came to plaintiff's cell and stated that Dycus instructed him to ask plaintiff what greasy stuff he had on his

wrists when he was placing the restraints on plaintiff. Plaintiff denied having anything on his wrists. After again talking with Dycus, Gilbert returned and asked plaintiff what medication he had in his cell. Plaintiff stated he did not have any medication in his cell and that Gilbert knows that all medication in the segregation unit is kept up front. Plaintiff notes that he had asked for his medication earlier from Gilbert, Domenico, and Dycus but was told that he would not receive it on that shift.

Subsequently, nurse Traub returned to plaintiff's cell. She told plaintiff Dycus requested that she return to re-examine plaintiff's wrist injuries and to make a new report to replace the first examination of injuries report. Upon inquiry, plaintiff told Traub that he still felt enormous pain in his hands and tingling and numbness in his left hand. Traub documented the injuries and markings still visible on plaintiff's wrists.

Plaintiff wrote numerous informal grievances and requests for his injuries and pain, but he was able to see the doctor only in November 2002, 4.5 months after the injury. When plaintiff saw the doctor, the doctor stated that plaintiff had suffered severe nerve damage which might be permanent to his left hand as a result of the injury. The doctor further stated that he could do nothing as nerves have to repair themselves, that the nerves may possibly heal, and if they do, it would be at a rate of a half inch per year from the point of injury, which in plaintiff's situation would easily take over ten years, if the damage is not permanent.

Plaintiff raises the following four claims for relief:

**Claim Two.** Eighth Amendment violation by defendants Dycus, Gilbert, and Domenico based upon their deliberate indifference to serious medical needs by failing to allow plaintiff to make his medical problem known to medical staff.

**Claim Three.** Eighth Amendment violation by defendant Gilbert's failure to intervene while Dycus applied excessive force to plaintiff.

**Claim Six.** Eighth Amendment violation by defendants Gilbert and Domenico when they intentionally refused to give plaintiff his prescribed medication for pain and discomfort.

**Claim Seven.** Eighth Amendment violation by Traub by intentionally, casually, and unjustly disclosing plaintiff's confidential medical information to non-medical staff, namely, Dycus.

Plaintiff seeks declaratory and monetary relief, including punitive damages.

## DISPOSITIVE MOTIONS

Now before the court for a report and recommendation are two dispositive motions. The first is the Defendants' Motion to Dismiss or Alternatively For Summary Judgment (Docket No. 287) to which plaintiff filed a Response (Docket No. 297) and an Amended Response (Docket No. 327), and defendants filed a Reply (Docket No. 303). The second motion is the Plaintiff's Motion for Summary Judgment, including his declaration and affidavit in support (Docket No. 315), to which defendants filed a Response (Docket No. 330). Plaintiff was given an extension of time up to and including January 30, 2009, to file a reply brief (Docket No. 338 Minute Order), but to date, such reply has not been received by the court. The court has considered all of these motion papers as well as the court's file and applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings, conclusions, and recommendations on the two motions.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp., 127 S. Ct. at 1974 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . .  Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Rule 56(c) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), **except the mere pleadings by themselves**.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001) (emphasis added), aff'd, 328 F.3d 1267 (10th Cir. 2003). However, "[i]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be _admissible_. . . . The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but '"the content or substance of the evidence must be admissible."' . . . Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because 'a third party's description of a witness' supposed testimony is "not suitable grist for the summary judgment mill."'" Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).

"Summary judgment is also appropriate when the court concludes that no

reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Southway, 149 F. Supp.2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . .  Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).

Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or in the alternative for summary judgment pursuant to Fed. R. Civ. P. 56 on plaintiff's claims against them.  They contend that plaintiff's claim of deliberate indifference against defendant Gilbert fails for lack of personal participation by Gilbert in any alleged unconstitutional conduct and his inability to intervene to prevent any unconstitutional conduct.  Next, defendants assert that plaintiff's claim against Dycus, Gilbert, and

Dominico for refusing to allow plaintiff medical attention for his injured wrists and failing to provide plaintiff with his prescribed medication fail because plaintiff suffered no injury from the several-hour delay in receiving medical attention and medication. In addition, defendants contend that plaintiff's claim against Dycus must be dismissed because plaintiff has failed to exhaust his administrative remedies. Finally, defendants assert that plaintiff's claim against defendant Traub for disclosing plaintiff's confidential medical records fails because plaintiff has not established he suffered a physical injury as a result of the disclosure of his medical records, and plaintiff has failed to exhaust his administrative remedies.

Plaintiff also moves for summary judgment, asserting that Gilbert violated his Eighth Amendment rights by aiding and failing to intervene while Dycus applied excessive use of force, that Dycus was deliberately indifferent in denying plaintiff access to medical personnel after he inflicted excessive physical injury upon plaintiff, that defendant Traub violated plaintiff's medical confidentiality, and that Gilbert and Domenico were deliberately indifferent for denying plaintiff his prescription medication.

As an initial matter, this court notes that plaintiff asserts in his response to defendants' motion that defendants' motion to dismiss should not be converted into a motion for summary judgment and that summary judgment should be denied because discovery is not complete, and, citing Fed. R. Civ. P. 56(f), he needs the opportunity to obtain necessary facts to refute defendants' motion adequately. Plaintiff further notes that defendants failed to respond to his discovery request adequately, and that he then filed several motions to compel, which were denied. Furthermore, plaintiff states that if the court does convert the defendants' motion to dismiss into a motion for summary

judgment, plaintiff requests that he be notified of such and be given the opportunity to respond appropriately to a summary judgment motion.

This is not a case, however, where the defendants moved solely to dismiss, and the court determined that it was necessary to convert such motion to one for summary judgment. Here, defendants moved alternatively to dismiss or for summary judgment. Plaintiff was thus on notice that the court could consider the defendants' motion as one for summary judgment. Furthermore, as noted by defendants, the examples provided by plaintiff of instances where he was denied discovery have been all ruled on by the court. In addition, defendants also correctly assert that plaintiff has not complied with Fed. R. Civ. P. 56(f)[1] due to his failure to supply an affidavit detailing the fact discovery needed to rebut defendants' motion. A continuance or dismissal of the defendants' motion is thus not warranted.

### Failure to Exhaust Administrative Remedies - Claims Two and Seven

Defendants assert that Claims Two and Seven should be dismissed because plaintiff has not exhausted his administrative remedies. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Pursuant to Jones v.

---

[1]Rule 56(f) provides that "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." Fed. R. Civ. P. 56(f).

Bock, "the failure to exhaust is an affirmative defense under the PLRA, and . . . inmates

are not required to specially plead or demonstrate exhaustion in their complaints."

Jones, 127 S. Ct. at 921.  Furthermore, the Tenth Circuit subsequently held that as an

affirmative defense, exhaustion must be raised and proven by the defendants.  Roberts

v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007).

The Colorado Department of Corrections has a Grievance Procedure available to

inmates which entails first a written informal grievance and then a formal three-step

written grievance procedure.  See Administrative Regulation No. 850-04 (Defs.' Ex. A-

6).  Defendants here assert that it is apparent that plaintiff has not exhausted his

administrative remedies.  More specifically, plaintiff has two Step I grievances.  The first,

dated July 3, 2002, which is attached to the Amended Prisoner Complaint, refers to the

July 2, 2002, incident and states that Dycus used excessive force when applying the

restraints and also mentions an allegation against Dycus, Hollman, and Carter for

assessing him ten additional days of segregation without a hearing (which is not a part

of the Amended Prisoner Complaint).  The second Step I grievance is attached to

plaintiff's objections to this court's previous recommendation.  It is also dated July 3,

2002, and alleges that plaintiff was denied his medication on that date while he was in

segregation.  In addition, in a Step II grievance dated August 5, 2002, which is attached

to the Amended Prisoner Complaint, plaintiff states that Dycus denied him a shower, the

right to exercise, and his medication on July 2, 2002.  Another Step II grievance, which

is attached to plaintiff's objections to this court's previous recommendation, is dated

August 4, 2002, and asserts that Dycus caused plaintiff bodily injury.  It does not specify

how or when the injury was caused.  Two Step III grievances, which are attached to the

Amended Prisoner Complaint, are dated September 3 and 6, 2002.  Plaintiff alleges

therein that Dycus used excessive force when applying restraints on July 2, 2002, and

that plaintiff was denied his medication, ability to shower, right to participate in

recreation, and right to seek a medical provider.  Defendants thus assert that plaintiff

has exhausted only his allegation that Dycus used excessive force against him and the

application of restraints and refused to provide him with his medication.      In response,

plaintiff claims that this argument is barred by the doctrine of res judicata because the

defendants raised this same argument in its prior motion to dismiss in which the Tenth

Circuit Court of Appeals overturned that portion of the court's order.  Since defendants

did not appeal that Tenth Circuit ruling, plaintiff claims that defendants have waived

relitigation of the exhaustion argument.  Plaintiff's argument has no merit.  The Tenth

Circuit remanded plaintiff's federal claims for further proceedings based upon the

Supreme Court's ruling in <u>Jones v. Bock</u>, which was issued after Judge Miller dismissed

plaintiff's case on the basis of failure to exhaust. (Docket Nos. 271 and  275).  The court

stated:

> In light of this intervening precedent, we vacate that portion of the district
> court's opinion dismissing Mr. Wallin's federal claims against defendants
> Gilbert, Domenico, Traub, Bair, Fuchs, Wederiski, Brill, CCA, and Dycus
> due to Mr. Wallin's failure to plead exhaustion, and we remand for further
> proceedings consistent with the Supreme Court's opinion in *Jones v.
> Bock*.  **The district court is, of course, free to consider motions from
> these parties that properly raise Mr. Wallin's failure to exhaust as an
> affirmative defense.**

(Docket No. 271 at 11) (emphasis added).  Such remand thus does not preclude

defendants from raising the exhaustion issue in the instant motion.

Plaintiff further asserts that he filed all steps of the grievance process in regard to

the incident and that the Step 3 grievance officer ruled that plaintiff had exhausted his administrative remedies.  In addition, he contends that pursuant to AR 850-04, he was not required to continue to file grievances concerning the same incident, and the PLRA does not require litigants to list each defendant or each claim that may arise out of an incident.  Finally, he asserts, but has not shown, that the grievance system established at the facility "was inadequate and not in conformity with the beliefs of the defendants."

The court, however, finds that while the plaintiff need not name in his grievance every individual that he includes in his civil complaint or specify each and every potential legal claim for relief, he must generally describe the conduct complained of in a sufficient manner to provide prison officials with an opportunity to remedy the grievance. Through his grievances, plaintiff here did not put prison officials on notice that he was claiming that he was refused medical treatment after he allegedly sustained injuries to his wrists and/or that his medical confidentiality was allegedly violated when Traub allegedly shared information contained in the anatomical report form with correctional officers.  Therefore, plaintiff's Claim Two and Seven should be dismissed without prejudice for failure to exhaust administrative remedies.  As found below, however, it is further recommended that summary judgment be granted to defendants on the merits of these claims as well.

**Claims Two and Six - Delayed Access to Medical Attention and**

**Prescriptions**

"[P]risoners have an Eighth Amendment right to adequate medical care . . . ." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001).  "In keeping with the principle

that government officials are generally afforded wide latitude when fulfilling their discretionary functions, . . . however, in cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious medical needs of prisoners in their custody.'" Id.  However, "a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in **substantial harm.**" Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (quotations omitted) (emphasis added).  As the Tenth Circuit has explained:

> to properly set forth an Eighth Amendment claim on which relief may be granted, [the prisoner] must set forth facts demonstrating [1] that his alleged medical need . . . was sufficiently serious to meet the objective element of the deliberate indifference test, and [2] **that the Defendants' delay in meeting that need caused him substantial harm**. . . .  Finally, to meet the subjective element of the deliberate indifference test, [the prisoner] must allege facts supporting an inference [3] that Defendants knew about and disregarded a substantial risk of harm to his health or safety.

Oxendine v. Kaplan, 241 F.3d at 1276-77 (quotations omitted) (emphasis added).

Defendants assert that the plaintiff's claim against Dycus, Gilbert, and Domenico for delaying plaintiff's access to medical attention and for delaying plaintiff's request for his prescription medication fail because the plaintiff can point to no serious injury arising from the delays.  Defendants first note that plaintiff cannot specifically recall what prescription medications he was taking on the day of the incident.  He believes he was taking Tolnaftate cream for his skin condition twice daily, yet he cannot be sure.  He does not recall what other medication, if any, he was taking that day.  He claims the

denial of his skin cream for several hours caused his skin to become irritated, scratchy, and itchy, but he conceded that no doctor has told him that his skin condition worsened as a result of the denial of his skin cream for several hours that day.  Defendants assert that inasmuch as plaintiff can point to no other injury or worsening of a medical condition as a result of being denied his prescription medication that one day, his Eighth Amendment claim for deliberate indifference to his serious medical needs must fail.

Next, defendants note that the incident involving the application of handcuffs occurred at 8:44 a.m., and plaintiff was examined by Traub that day at 1:35 p.m. and again approximately 50 minutes later.  They further note that Traub documented no injury to plaintiff, noting only red marks and a slight indentation on the wrist.  Defendants claim plaintiff concedes that Traub examined him on both occasions and that she provided him with pain pills, and defendants note that plaintiff does not recall whether he asked Traub to provide him with his prescribed medications.  Defendants assert that because plaintiff cannot establish that a several-hour delay in receiving his prescription medications and to be examined by a nurse resulted in substantial harm to plaintiff, his Eighth Amendment claims against Gilbert, Domenico, and Dycus must fail.

In response, plaintiff incorrectly asserts that the deliberate indifference standard does not apply here and that he must show only that the defendant(s) acted "maliciously and sadistically."  As correctly noted by defendants in their Reply (Docket No. 303 at 3), plaintiff's Claim Two asserts a claim of deliberate indifference to plaintiff's serious medical needs by refusing plaintiff access to medical treatment for injuries allegedly sustained to his wrists.  It does <u>not</u> raise a claim of excessive force by Dycus. Plaintiff further asserts in response that Dycus knew of the injury that he caused and

intentionally failed to seek medical help.  Plaintiff states he was unable to make his medical problems known to medical staff because Dycus would not call medical staff and would not allow the other officers to call medical staff, which plaintiff asserts shows deliberate indifference by Dycus.  Plaintiff further asserts that he suffered severe nerve damage to his wrists which may have been adequately treated to avoid or minimize the nerves being damaged if medical would have been called immediately.  Plaintiff asserts that "[t]his is disputed evidence that requires medical expertise and should not be decided upon in this motion to dismiss and/or motion for summary judgment."

This court, however, agrees with defendants that the plaintiff has failed to show that the several-hour delay in plaintiff's receipt of medical care and the delay in his receipt of his prescriptions resulted in substantial harm.  "Delays that courts have found to violate the Eighth Amendment have frequently involved life-threatening situations and instances where it is apparent that delay would exacerbate the prisoner's medical problems. . . .  Officials may also be held liable when the delay results in a lifelong handicap or a permanent loss."  <u>Grant v. Bernalillo County Detention Center</u>, 173 F.3d 863, *3 (Table) (10th Cir. Mar. 23, 1999) (Inmate plaintiff merely alleged that he was "in bad pain" after a fall and was taken to a doctor "after some time."  He did not state a claim of deliberate indifference to a serious medical need.).  "In contrast, in instances in which delays in providing treatment involve less serious medical conditions, the Eighth Amendment may not be implicated.  *See, e.g.*, *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th cir. 1990) (**concluding that a delay in obtaining treatment for a prisoner's swollen, bleeding wrists, caused by tight handcuffs, was insufficient to establish**

**an Eighth Amendment claim**); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988)

(concluding that a fourteen hour delay in obtaining treatment for a sliver of glass in a

detainee's palm did not constitute deliberate indifference to a serious medical need

under the Eighth Amendment)." Id. (emphasis added).  See Jackson v. Simmons, 2001

WL 1456859 (D. Kan. Nov. 2, 2001) (Inmate plaintiff alleging excessive force including

putting handcuffs on excessively tight which caused severe pain and swelling.  Court

found the injury to plaintiff's wrists to the handcuffs may be insufficient by itself to

constitute an Eighth Amendment violation.).

　　　　As shown by the defendants, the handcuffing incident occurred at approximately

8:44 a.m., and Traub first examined the plaintiff at 1:35 p.m. and again approximately

50 minutes later.  Moreover, following the first examination, Traub merely reported

"indentations (slight) slightly red . . .  reports tingling in [left] thumb area; ROM normal.

Hands Warm. . . . [Inmate] reports pressure from cuff hurt wrist bone" (Docket No. 287-

4 at 1), and during the second exam merely reported "slight indentation in inner [right]

wrist. . . . Fingernails blanch [within] 1-2 seconds on hands bilat."  (Docket No. 287-5 at

1).  While plaintiff alleges a doctor diagnosed nerve damage, plaintiff has provided no

evidence of such diagnosis.  Instead, he has provided only his hearsay statement of

what an unidentified doctor purportedly stated.  Such hearsay cannot be used to defeat

a motion for summary judgment.  See  Adams v. American Guarantee & Liability Ins.

Co., 233 F.3d 1242, 1246 (10th Cir. 2000).  Furthermore, even assuming plaintiff actually

suffered some nerve damage, plaintiff has made no showing that the several-hours'

delay in obtaining treatment by Traub resulted in substantial harm to plaintiff.  In fact,

plaintiff testified that the doctor who purportedly made that diagnosis stated that there

was nothing that could be done, and plaintiff has since been in several correctional facilities, yet he has not sought treatment for his wrists. (Docket No. 287-2 at 7-8).

With regard to plaintiff's claim that he was denied prescription medication by defendants Dycus, Gilbert, and Domenico, plaintiff has again failed to show substantial harm. In fact, plaintiff's deposition transcript shows that plaintiff cannot even remember exactly what prescription medications he was supposed to take that day and when they were to be taken. (See Docket No. 287-6, Pl.'s Dep. Transcript at 26-27). When shown his Medication Administrative Record, he acknowledged that the medications could possibly be the Tolnaftate cream and Naproxen, but he was not sure. (See Docket No. 287-2 at 6, Dep. Transcript at 28). He did not even recall exactly what they were prescribed for, and when asked how he was injured as a result of these officers not giving him his medication, he responded, "Well, without my skin cream, my skin was irritated, irritated, itchy, scratchy." (Docket No. 287-2 at 6, Dep. Transcript at 29). When asked whether any doctor ever told him that his skin condition worsened or that he was in any way injured as a result of being denied his medication during Dycus' shift, plaintiff stated, "No, I never spoke to a doctor, just from personal-just from personal affliction, I came to that conclusion." (Docket No. 287-2 at 9, Dep. Transcript at 40).

In sum, this court finds that summary judgment should be granted to defendants Dycus, Gilbert, and Domenico on Claim Two because plaintiff has failed to establish an Eighth Amendment violation.

### Claim Three - Failure to Intervene

"'[A] law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983.' Mick v.

Brewer, 76 F.3d 1127, 1136 (10th Cir. 1996).  Specifically, 'an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.'  Fundiller v. City of Cooper City, 777 F.2d 1436, 1442 (11th Cir. 1985)."  Gruenwald v. Maddox, 274 Fed.Appx. 667, 674 (10th Cir. 2008).

Defendants assert that because any claim against Dycus for excessive force fails for lack of a constitutional violation, plaintiff's claim against Gilbert for failure to intervene during the alleged unconstitutional act also fails.  Defendants contend that Dycus' conduct, even as characterized by plaintiff, cannot be described as undertaken with wantonness and an intention to inflict pain.  According to defendants, handcuffing inmates is an integral part of prison life, particularly for inmates housed in a prison segregation unit.  In addition, defendants assert that according to plaintiff's own testimony, Dycus removed the handcuffs almost immediately after plaintiff complained they were hurting him.  After both handcuffs were placed on plaintiff's wrists, plaintiff states that he stood up, turned around, and complained to Dycus that the handcuffs were too tight.  Plaintiff admits that the handcuffs were on for only a few minutes before Dycus removed them.  Defendants assert that although plaintiff testified that he complained to Dycus that the cuffs were hurting him after Dycus had handcuffed the left wrist before the right wrist was handcuffed, that alone is insufficient to establish that Dycus was acting wantonly.  They note that Dycus has testified that he placed the left handcuff on plaintiff and checked the tightness after plaintiff complained that it was hurting him.  (Dycus Aff, Defs.' Ex. A-5).  In addition, he testified that he did not initially remove the handcuff because there was a finger space in between the plaintiff's wrists

and handcuff which, according to policy, is how the handcuff is to be applied.  In addition, Dycus testified that he nonetheless removed the handcuffs after plaintiff again complained they were hurting him after application to the right wrist.  Finally, Dycus testified that the handcuffs were on for no more than two minutes and that at no time were his actions taken to cause the plaintiff pain.

Defendants further assert that although a significant injury is not required for an Eighth Amendment violation, "the extent of injury may be relevant in determining whether corrections officers unnecessarily and wantonly inflicted pain."  (Docket No. 287 at 14) (quoting Northington v. Jackson, 973 F.2d 1518, 1523-24 (10th Cir. 1992)). Defendants note that here, other than plaintiff's own self-diagnosis, plaintiff has not established that he was injured as a result of Dycus' placement of the handcuffs. Defendants once again note that plaintiff admits that after the handcuffs were removed, nurse Traub examined him and noted that the plaintiff had slight indentations and red marks around both wrists, yet maintained a full range of motion, and she saw no visible breaking of the skin, cuts, or lacerations.  That examination was conducted at 1:35 p.m., and Traub's second exam was conducted approximately fifty minutes later during which she noted that plaintiff had a slight indentation on the right inner wrist, though the other red marks and indentations noted in the first exam were gone.  Traub once again did not observe any visible breaking of the skin, cuts, or lacerations.

Furthermore, as noted above, while plaintiff asserts that a doctor advised him that plaintiff suffered nerve damage as a result of the incident, plaintiff is unable to identify the doctor and has not produced any medical report supporting his statement. Defendants assert that plaintiff's hearsay statement is insufficient to create an issue of

fact concerning his injury.

Defendants further note that plaintiff admits that after leaving KCCC, he has been incarcerated in four different correctional facilities and has not sought medical treatment at any of those facilities for his wrist injury. Defendants assert that although plaintiff contends that the application of the handcuffs resulted in pain and tingling in his left hand, absent specific "medical evidence" to support such a claim, plaintiff's "'self-diagnosis alone cannot establish' the causal relationship between a prison condition and an alleged physical ailment." (Docket No. 287 at 15) (quoting Kayser v. Caspari Superintendent, Missiouri Eastern Correctional Center, 16 F.3d 280, 281 (8th Cir. 1994)).

Finally, defendants assert that since plaintiff's allegations fail to establish the existence of a constitutional violation against Dycus in applying the restraints, there can be no constitutional violation against Gilbert for failing to intervene. Furthermore, they assert that Gilbert is entitled to summary judgment on this claim because an Eighth Amendment claim for failure to intervene requires an opportunity to intervene to prevent the alleged unconstitutional conduct, noting that the entire handcuffing incident lasted less than two minutes before Dycus removed the restraints. Defendants further note that plaintiff testified that after the handcuffs were secured by Dycus, plaintiff stood up, turned around, and complained that the handcuffs were too tight. In response to the complaint, Dycus instructed plaintiff to turn around, and Dycus removed the handcuffs. Since the handcuffs were removed almost immediately after plaintiff complained about their tightness, there allegedly was no possibility for Gilbert to intervene.

Plaintiff responds that "[t]he affidavits of the plaintiff and the defendants are

squarely contradictory as to what force was used, when it was used, and why it was used. The allegations in Wallin's affidavit portray a completely needless use of force against him or any other inmate who was locked in his cell and was attempting to cooperate with the officers. There is clearly a genuine issue of fact." In addition, plaintiff claims that the factual dispute is material.

This court finds, however, that it is unnecessary to reach the issue of whether Dycus applied force maliciously or sadistically to cause harm and thus utilized unconstitutional excessive force because the court agrees with defendants that since the handcuffs were removed almost immediately after plaintiff complained about their tightness, there was no reasonable opportunity for Gilbert to intervene and prevent or stop Dycus's actions. Therefore, summary judgment should be granted to defendant Gilbert on Claim Three.

### **Claim Seven - Disclosure of Confidential Information**

Defendants assert that plaintiff's claim against defendant Traub for disclosure of confidential information is barred by the physical injury requirement of the PLRA, namely, 42 U.S.C. § 1997e(e). Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Plaintiff disagrees and first asserts that he did suffer physical injury during the excessive force incident, and thus the PLRA physical injury requirement has been met. This court does not agree with this assertion. Defendants correctly argue that the PLRA's physical injury requirement is claim specific. Turner v.

Schultz, 130 F. Supp.2d 1216, 1223-24 (D. Colo. 2001).  The act complained of in

Claim Seven is separate and distinct from the alleged act of excessive force.

Since plaintiff here has not shown a physical injury in connection with Traub's

alleged disclosure of confidential medical information, plaintiff's claim for

compensatory damages on Claim Seven should be dismissed.

Plaintiff also asserts that the physical injury requirement is unconstitutional

and violates "Equal Protection, Due Process, Eight Amendment Cruel and Unusual

Punishments, Double Jeopardies . . . ."  Defendants correctly note that plaintiff

cites no authority for such contention.  Furthermore, the Tenth Circuit has found

that "the restriction on damages of 42 U.S.C. § 1997e(e) does not violate plaintiff's

right of access to to the courts or otherwise run afoul of constitutional restrictions."

Searles v. Van Bebber, 251 F.3d 869, 877 (10th Cir. 2001).

Plaintiff further contends that the physical injury requirement does not bar

actions for declaratory and punitive relief.  The Tenth Circuit has stated that

> [t]he plain language of the statute does not permit alteration of its
> clear damages restrictions on the basis of the underlying rights being
> asserted.  The underlying substantive violation . . . should not be
> divorced from the resulting injury, such as "mental or emotional
> injury," thus avoiding the clear mandate of § 1997e(e).  The statute
> limits the remedies available, regardless of the rights asserted, if the
> only injuries are mental emotional.

Id. at 876.  Nevertheless, the Searles decision does not mean that this claim is

barred by § 1997e(e).  Rather, only plaintiff's claim for compensatory damages is

prohibited.  Plaintiff could receive nominal and punitive damages if the trier of fact

were to conclude that the plaintiff's constitutional rights were violated.  Id. at 875-

76, 878-80; Baughman v. Saffle, 24 Fed.Appx. 845, 2001 WL 1241329, *2 n.2 (10th

Cir. Oct. 17, 2001).

In any event, as found above, this court recommends that this claim be dismissed for failure to exhaust administrative remedies. In addition, it is further recommended that the claim be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)[2] on the basis that the plaintiff has not stated an Eighth Amendment violation. Even assuming Traub in fact disclosed plaintiff's confidential medical information to Dycus, her actions would not constitute an Eighth Amendment violation as alleged by the plaintiff.[3] The Eighth Amendment does not encompass such privacy concerns. In addition, plaintiff has not alleged or shown that this alleged disclosure let any inmates or officers physically harm him.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendants' Motion to Dismiss or Alternatively For Summary Judgment (Docket No. 287) be **granted**. It is further

**RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Docket No. 315) be **denied**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file**

---

[2]Section 1915(e)(2)(B)(ii) provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ."

[3]Even if plaintiff is perhaps raising a claim of a violation of the Health Insurance Portability and Accountability Act ("HIPAA"), but HIPAA's privacy regulations do not provide a private cause of action. Harrison v. University of Colorado Health Science Center, 2009 WL 103663 (D. Colo. Jan. 14, 2009); University of Colo. Hosp. Auth. v. Denver Pub. Co., 340 F. Supp.2d 1142 (D. Colo. 2004).

written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).


Date:      February 25, 2009             <u>s/ Michael J. Watanabe</u>
              Denver, Colorado                 Michael J. Watanabe
                                        United States Magistrate Judge